STEVEN ERNST *v.* DEERE AND COMPANY ET AL.
(AC 25732)

Flynn, DiPentima and Harper, Js.

Argued September 16—officially released December 13, 2005

*Daniel S. Blinn*, with whom were *Matthew T. Theriault* and, on the brief, *Richard F. Wareing*, for the appellant (plaintiff).

*James V. Somers*, with whom, on the brief, were *Bruce H. Raymond* and *N. Kane Bennett*, for the appellee (named defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Steven Ernst,[1] appeals from the judgment of the trial court, rendered in his

[1] In the plaintiff's original complaint of December 29, 2000, the plaintiff's name is spelled as it appears in the present appeal. In the plaintiff's amended complaint of February 15, 2001, however, his name is spelled "Ernest," and

favor, in which the court awarded him a lesser amount of attorney's fees than he had requested. On appeal, the plaintiff claims that, after determining that the reasonable value of the fees was approximately $27,000, the court abused its discretion by awarding only $7040.75. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. During their search for a lawn tractor in early 1998, the plaintiff and his wife had seen a sales representative from Lomac East Ltd. (Lomac), a dealership in East Windsor, start without difficulty a display model of a John Deere LT 155 riding lawn tractor. On March 28, 1998, the plaintiff purchased the same model and paid a total of $3230.88, which included $2499 for the tractor and the remainder for accessories and sales tax.

The tractor exhibited difficulties in starting from the beginning, although after being successfully started, the tractor mowed the lawn satisfactorily. The plaintiff brought the tractor to Lomac several times in an effort to address the starting problem, and, despite repeated attempts, Lomac ultimately was unable to correct it. The plaintiff returned the tractor to Lomac on the brink of the two year anniversary date of the purchase, retrieved it six months later and returned it a final time in the fall of 2000, complaining that the tractor did not work properly.

The plaintiff brought an action against both Lomac and the defendant Deere & Company (Deere)[2] on

that spelling has been used until this appeal, when it reverted back to "Ernst." During the hearing of February 18, 2004, the trial court, *Beach, J.*, acknowledged that the plaintiff's real name was Ernst, "although the computer system thinks it's Ernest." See generally O. Wilde, The Importance of Being Earnest (1895).

[2] As to Lomac, the plaintiff claimed revocation of acceptance, breach of implied warranty of merchantability and unfair trade practices. Lomac settled with the plaintiff on December 3, 2001, for a sum of $2500, and the

December 29, 2000, claiming, as to Deere, a breach of express warranty and violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. (Magnuson-Moss). The plaintiff proceeded in his action against Deere, and the matter was referred to arbitration, pursuant to Practice Book § 23-61. After the arbitrator's decision was submitted, Deere filed a claim for a trial de novo, pursuant to Practice Book § 23-66. The matter proceeded to a bench trial. In its memorandum of decision of January 20, 2004, the court found no violation of an express warranty but found in favor of the plaintiff as to the Magnuson-Moss claim. The court instructed the plaintiff to make a claim for attorney's fees under the act, and a hearing was held on February 18, 2004. In its ruling of June 8, 2004, the court awarded $7040.75 in attorney's fees and expenses, from a requested $27,000. The plaintiff now appeals challenging the court's award of attorney's fees.

It is well settled that we review the award of attorney's fees for a clear abuse of discretion. "Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal; we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion . . . ." (Internal quotation marks omitted.) *Krack* v. *Action Motors Corp.*, 87 Conn. App. 687, 694–95, 867 A.2d 86, cert. denied, 273 Conn. 926, 871 A.2d 1031 (2005). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the

plaintiff relinquished ownership of the tractor and withdrew the action against Lomac.

questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 253, 828 A.2d 64 (2003).

The plaintiff asserts that the manner in which the court reached the amount of attorney's fees awarded constituted a manifest abuse of discretion. We disagree. "[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors." (Citation omitted; internal quotation marks omitted.) *Laudano* v. *New Haven*, 58 Conn. App. 819, 822–23, 755 A.2d 907 (2000). For guidance in adjusting attorney's fees, Connecticut courts have adopted the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. Id.; see also *Krack* v. *Action Motors Corp.*, supra, 87 Conn. App. 695; Rules of Professional Conduct 1.5.[3]

---

[3] We note, however, that "[t]hat list of factors is not . . . exclusive. The court may assess the reasonableness of the fees requested using any number of factors . . . ." (Internal quotation marks omitted.) *Krack* v. *Action Motors Corp.*, supra, 87 Conn. App. 695.

The court began with the "lodestar" analysis and, in considering the detailed and itemized statement of fees submitted by the plaintiff at the prior trial on the merits, decided that the amount claimed was reasonable. The court then proceeded to apply the *Johnson* factors to adjust the amount of the attorney's fees: "The starting point traditionally is the 'lodestar' amount determined by multiplying a reasonable hourly rate or rates times the number of hours reasonably expended; the amount may then be adjusted by a set of considerations. The seminal case, relied upon time after time is *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). I find that the number of hours expended in this case and the hourly rates are reasonable, especially in consideration of [the plaintiff's attorney's] painstaking and very fair reductions in the amounts sought. But that does not end the inquiry in the circumstances of this case." Although it considered the degree of success on the merits and the contingency fee arrangement to be the most important, the court expressly applied several of the *Johnson* factors in concluding that the "lodestar" amount should be reduced.[4] Accordingly, we conclude that the court was comprehensive in its analysis and there was no abuse of discretion.

---

[4] The court stated: "The degree of success on the merits is a critical factor to consider, and, in some instances, the only significant factor. . . . Another significant factor applicable to this case is the existence of a contingency fee arrangement: If there was a contingent fee agreement, and the plaintiff himself obtains a full recovery of damages by having his fees paid in addition to compensatory damages such that he actually receives the full amount of his compensatory damages, then one purpose of shifting fees is satisfied. . . .

"I have considered the other *Johnson* factors and do not deem any of the others especially compelling. For example, I find that the issues, though interesting, are not especially complex, and the attorneys specifically stated that other employment was not foreclosed by taking on this case. The reputation and ability of the lawyers were certainly commendable, though it should be noted that the actual trial lawyer is relatively inexperienced. In any event, the other factors do not sway the result one way or the other." (Citations omitted.)

The plaintiff further asserts that the court's diminished award of attorney's fees undermines the clear policy of Magnuson-Moss. We disagree. "Magnuson-Moss gives authority to the court to grant attorney's fees in a civil suit." *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 588, 552 A.2d 1207 (1989). The statute provides in relevant part: "If a consumer finally prevails in any action brought under . . . this subsection, he *may* be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, *unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.*" (Emphasis added.) 15 U.S.C. § 2310 (d) (2).

We acknowledge the policy argument that underlies the plaintiff's claims. A clear motivation for Congress to enact Magnuson-Moss was to allow for potentially small claims in consumer actions. This court recently stated that "[g]iven the social benefit of consumer protection cases, it is good public policy to encourage the prosecution of claims that, although small, are meritorious by awarding attorney's fees. As evidenced by [the applicable section of Magnuson-Moss], that policy clearly has been adopted by Congress as well." *Krack* v. *Action Motors Corp.*, supra, 87 Conn. App. 698. It should be noted that in the present case, the court *did* award the full attorney's fees accrued to the time of settlement with Lomac, as well as some of those claimed in the action against Deere.[5] Magnuson-Moss, while

---

[5] The court described the plaintiff's victory as "largely Pyrrhic" and likened the plaintiff to that in *Farrar* v. *Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). In *Farrar*, attorney's fees of $280,000 were rejected altogether when the plaintiff had been awarded only nominal damages. In this case, the plaintiff was awarded his full amount of attorney's fees to the time of settlement and some of the attorney's fees after settlement, the

allowing the award of attorney's fees in consumer cases, expressly gives the court great discretion to determine the amount. We conclude that the court did not deviate from public policy such that a finding of clear abuse of discretion would be warranted.

The judgment is affirmed.

In this opinion the other judges concurred.

combination of which was almost three times as much as the recovery of compensatory damages.