JEFFREY RUBENSTEIN *v.* BONNIE RUBENSTEIN
(AC 27634)
(AC 28298)

Bishop, Gruendel and Beach, Js.

Argued February 4—officially released May 6, 2008

*Bonnie Rubenstein*, pro se, the appellant (defendant).

*Jeffrey Rubenstein*, pro se, the appellee (plaintiff).

*John T. Asselin-Connolly*, for the guardian ad litem.

*Opinion*

BEACH, J. These two appeals arise from the 1997 dissolution of the parties' marriage. The substantial gap in time between the dissolution judgment and the rendering of the judgments that are the subject of this appeal was caused when the pro se defendant, Bonnie Rubenstein, removed herself and the parties' minor son from this jurisdiction from 1997 until 2002. In AC 28298, the defendant claims that the trial court (1) improperly entered an award of lifetime alimony because it (a) failed to consider and to apply the statutory factors set forth in General Statutes § 46b-82 and (b) erroneously found that she was at fault for causing the debt of the pro se plaintiff, Jeffrey Rubenstein, and (2) was biased against her. In AC 27634, the defendant claims that the court improperly (1) awarded guardian ad litem fees that were excessive and unreasonable, and (2) precluded evidence of fault during the apportionment hearing as to those fees.[1] We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our discussion. In March, 1996, the plaintiff filed an action seeking to dissolve the parties' three and one-half year marriage. In September, 1997, while the dissolution action was pending, the defendant removed the parties' minor son from Connecticut in derogation of the court's orders. Shortly thereafter, the court appointed attorney Susan M. Asselin-Connolly guardian ad litem for the child. A few months after the disappearance of the defendant, on December 5, 1997, the court, *Hon. Hadley W. Austin,* judge trial referee, dissolved the parties' marriage and, after finding that the plaintiff

---

[1] The plaintiff likewise argues that the court's allocation of fees was improper. We decline to review the plaintiff's claim because he failed to file a cross appeal. See Practice Book § 61-8; *Housing Authority* v. *Charter Oak Terrace/Rice Heights Health Center, Inc.,* 82 Conn. App. 18, 19 n.1, 842 A.2d 601 (2004).

had accumulated considerable debt in the search for his son, ordered the defendant to pay alimony and child support to the plaintiff. The alimony order stated specifically that "[t]he defendant shall pay to the plaintiff the amount of $50 per week as alimony, without prejudice." The whereabouts of the defendant and the child were not known until 2002, when they were discovered by federal law enforcement officers and returned to Connecticut.

Following the defendant's return to the jurisdiction, both parties filed motions to modify the December, 1997 alimony and child support award. Following a July 11, 2006 hearing at which both parties testified, the court, *Gordon, J.*, on November 16, 2006, filed a memorandum of decision construing the parties' motions to modify as motions for de novo review of the alimony order.[2] The court concluded that "[b]oth the plaintiff and the defendant have good earning capacities, but the plaintiff's financial situation was more dire, and moreover, it was caused by the conduct of the defendant. It is only equitable that she assist his support through a continuing order of alimony. Therefore, the court [orders that] the defendant shall pay to the plaintiff, as alimony, $50 per week until the death of either party. . . . All arrearages previously found are therefore still valid . . . ." The defendant thereafter filed an appeal challenging the court's de novo alimony order.

Prior to the parties' motions to modify, the guardian ad litem had filed a motion seeking costs and fees and an affidavit of debt detailing an outstanding sum of $78,542.30 yet to be paid. On January 6, 2006, the court, *Boland, J.*, filed interlocutory orders on fees for the attorney for the minor child and of the guardian ad

---

[2] Specifically, the court stated: "While the plaintiff has filed a motion to modify the alimony award entered, the motion is mistitled in light of the relief sought, and the court therefore construes it as a motion for a de novo review of the alimony award."

litem in which it concluded that the guardian ad litem was entitled to fees totaling $77,208.30 but expressly left the allocation of the fees between the parties for a later determination in light of the plaintiff's bankruptcy proceedings. On March 28, 2006, an allocation hearing was held at which the court, *Gordon, J.*, rendered an oral decision in which the court, inter alia, "[divided] responsibility for both the attorney's fees and guardian ad litem's fees, two-thirds attributable to [the defendant], one-third attributable to [the plaintiff]." The defendant subsequently filed an appeal challenging the allocation and reasonableness of the award of fees to the guardian ad litem.

## I

## AC 28298

### A

The defendant first challenges the de novo lifetime alimony order rendered by the court as well as the factual basis underlying that order. We conclude that the court did not abuse its discretion in awarding alimony and that its findings are supported by the record.

We begin by setting forth the standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the

record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 328–29, 913 A.2d 1096 (2007).

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

1

The defendant first claims that the court abused its discretion when it failed to consider and to apply the statutory factors set forth in § 46b-82. The defendant argues that several factors were ignored and that "the factors that were considered took place after the divorce proceedings and are irrelevant and not in accordance with the alimony guidelines." The defendant also asserts that the court's consideration of the plaintiff's debt in crafting its orders was improper under the guidelines.[3] We are not persuaded.

---

[3] Intertwined with the defendant's claim concerning the application of the alimony guidelines is an argument that the court improperly limited her testimony and did not allow her to introduce some evidence showing that the plaintiff was abusive and caused the breakdown of the marriage. The record reveals, however, that the defendant was permitted to testify as to her account of the breakdown of the marriage, including the alleged abusive

"Trial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes." *Hartney* v. *Hartney*, 83 Conn. App. 553, 559, 850 A.2d 1098, cert. denied, 271 Conn. 920, 859 A.2d 578 (2004). General Statutes § 46b-82[4] describes factors a court should consider in its decisions regarding alimony. "The court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor. . . . Nor need it give each factor equal weight." (Citation omitted; internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 137, 869 A.2d 164 (2005).

In its memorandum of decision, the court stated that it "considered all the evidence and statutory criteria contained in General Statutes § 46b-82 . . . ." It found that "[t]he plaintiff, in a search for his child, taken and hidden in contravention of court orders by the defendant, incurred monumental debt. The testimony

conduct of the plaintiff that purportedly led to her actions in leaving the country with her son. The court did not credit her testimony in this regard, as it stated explicitly in its memorandum of decision, and we do not second-guess the trial court's assessment of credibility. See *Doody* v. *Doody*, 99 Conn. App. 512, 519–20, 914 A.2d 1058 (2007).

[4] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

of the defendant as to the reasons for the breakdown of the marriage is not credible. Both the plaintiff and the defendant have good earning capacities, but the plaintiff's financial situation was more dire, and moreover, it was caused by the conduct of the defendant." The court also emphasized that it was not retroactively modifying the alimony order to take into account subsequent changes in the plaintiff's financial circumstances, which would be "contrary to law," but rather reviewing the order de novo, as "provided for in the [original] judgment."

The court is not required to make explicit reference to the statutory criteria that it considered in making its decision or to make express findings as to each statutory factor. *Dombrowski* v. *Noyes-Dombrowski*, supra, 273 Conn. 137. Here, the court expressly noted its consideration of the statutory criteria set forth in § 46b-82 and mentioned its findings as to several of those criteria in its memorandum of decision. Therefore, the defendant's argument that the court ignored several factors is unavailing. The defendant's assertion that the court impermissibly considered the debt the plaintiff incurred in the search for his child also is without merit. The court's finding in that regard is a reflection of the court's previous December 5, 1997 finding, which it communicated at a hearing held on the same day that the original alimony order was issued.[5] As to any debt the plaintiff incurred after the original December, 1997 alimony order, the court specifically underscored that it was not retroactively modifying the judgment due to any substantial change in the financial circumstances of the plaintiff. The court specifically noted that its "review

---

[5] At the hearing on December 5, 1997, the court, *Hon. Hadley W. Austin*, judge trial referee, stated: "With regard to the issue of alimony, once again the court reemphasizes . . . the particularly difficult situation, and mindful of the large sums that have been expended here as exhibited by [the plaintiff] in trying to locate the defendant and the child . . . ."

must take the place of the original proceeding." Accordingly, the defendant's argument fails.

2

The defendant next claims that the court abused its discretion in crafting its alimony order when it ignored the "tremendous debt [she incurred] due to the plaintiff's behavior." The defendant further argues that the court wrongfully blamed her for the plaintiff's financial situation. We interpret the defendant's argument as an invitation to review the court's finding that her testimony was not credible. We decline that invitation.

"*It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses.*" (Emphasis in original; internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 519–20, 914 A.2d 1058 (2007). It "has the advantage of viewing and assessing the demeanor, attitude and credibility of the witnesses and is therefore better equipped than we to assess the circumstances surrounding the dissolution action." *Palazzo* v. *Palazzo*, 9 Conn. App. 486, 488, 519 A.2d 1230 (1987). The court is therefore free to reject testimony it does not find credible. *Emanuelson* v. *Emanuelson*, 26 Conn. App. 527, 532, 602 A.2d 609 (1992). Here, we find nothing in the record to undermine our confidence in the court's fact-finding process. Therefore, we defer to the court's sound judgment in making its observations of the demeanor and conduct of the witnesses, including the defendant.

B

The defendant next claims that the court was prejudiced against her when it found that she was at fault for the plaintiff's financial situation. We do not agree.

"Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . Canon 3 (c) (1) provides in relevant part: A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . . To prevail on [his] claim of a violation of this canon, the [defendant] need not show actual bias. The [defendant] has met [his] burden if [he] can prove that the conduct in question gave rise to a reasonable appearance of impropriety." (Internal quotation marks omitted.) *Lucas* v. *Lucas*, 88 Conn. App. 246, 258, 869 A.2d 239 (2005).

The defendant has not cited anything in the record that demonstrates the court's bias against her. To support her claim, the defendant specifically refers to the court's observation that "[t]hat's her fault." That statement, however, pertained to the court's discussion of the alimony arrearage and its finding that the defendant had notice of the alimony order, despite her claims to the contrary. The defendant has not met the burden of proof required to prevail on a claim of judicial impropriety, and we find no merit to this claim.

## II

### AC 27634

#### A

Before considering the merits of the defendant's claims in AC 27634, we briefly address the guardian ad litem's assertion that the defendant's appeal from the March 28, 2006 judgment is untimely. The appeal form states that the defendant is appealing from the "final

judgment of award [to the] guardian ad litem [of] fees."
The guardian ad litem claims that the appeal from that
judgment is untimely because the defendant should
have appealed from an earlier, November 18, 2005 order
granting the guardian ad litem's motion in limine for
preclusion.[6] The guardian ad litem, however, failed to
file a motion to dismiss within ten days of the filing of
the defendant's appeal, as required by Practice Book
§ 66-8.[7] Consequently, she waived her right to seek dis-
missal of the defendant's appeal as untimely.[8] See *Chase
Manhattan Mortgage Corp.* v. *Machado,* 83 Conn. App.
183, 185 n.3, 850 A.2d 260 (2004).

B

The defendant next claims that the court improperly
awarded guardian ad litem fees that were excessive and
unreasonable. She also claims that the court improperly
precluded evidence of fault during the apportionment
hearing as to those fees. We disagree.

As we already have noted, "[a]n appellate court will
not disturb a trial court's orders in domestic relations
cases unless the court has abused its discretion or it
is found that it could not reasonably conclude as it
did, based on the facts presented." (Internal quotation

[6] In her motion in limine, the guardian ad litem asked the court to "preclude
both [the] [p]laintiff and [the] [d]efendant from calling any witnesses, elic-
iting any testimony and offering any evidence that relates to events that
postdate the filing of the action seeking the dissolution of their marriage."

[7] Practice Book § 66-8 provides: "Any claim that an appeal or writ of error
should be dismissed, whether based on lack of jurisdiction, failure to file
papers within the time allowed or other defect, shall be made by a motion
to dismiss the appeal or writ. Any such motion must be filed in accordance
with Sections 66-2 and 66-3 within ten days after the filing of the appeal or
the return day of the writ, or if the ground alleged subsequently occurs,
within ten days after it has arisen, provided that a motion based on lack of
jurisdiction may be filed at any time. The court may on its own motion
order that an appeal be dismissed for lack of jurisdiction."

[8] The filing of a late appeal does not implicate the subject matter jurisdic-
tion of this court. See *Ambroise* v. *William Raveis Real Estate, Inc.,* 226
Conn. 757, 762–63, 628 A.2d 1303 (1993).

marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 9–10, 787 A.2d 50 (2001). "The court may order either party to pay the fees for [a] guardian ad litem pursuant to General Statutes § 46b-62, and how such expenses will be paid is within the court's discretion."[9] *Ruggiero* v. *Ruggiero*, 76 Conn. App. 338, 347–48, 819 A.2d 864 (2003). "[W]e may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case. . . . Because the trial court is in the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Citation omitted; internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 64, 762 A.2d 508 (2000). "An abuse of discretion in granting [guardian ad litem] fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Sachs* v. *Sachs*, 60 Conn. App. 337, 347–48, 759 A.2d 510 (2000); see also *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 375, 830 A.2d 329 (2003).

1

The defendant first claims that the court's award of fees to the guardian ad litem was unreasonable and excessive. She specifically challenges the guardian ad litem's claim for twenty-seven straight hours of service, the time claimed for the services of the guardian ad litem's associates, the rate charged for the guardian ad

---

[9] "We note that although § 46b-62 addresses only the issue of *attorney's fees*, we previously have recognized that the same criteria properly inform the court's exercise of discretion regarding fees for a guardian ad litem appointed for a minor child in a dissolution of marriage action or in an action seeking a modification of custody and visitation." (Emphasis in original.) *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 375 n.3, 830 A.2d 329 (2003).

litem's time spent in Juvenile Court and the guardian ad litem's claims for time spent performing "nonguardian ad litem legal tasks and duties . . . ." The defendant also asserts that "some of the guardian ad litem's time was spent wastefully and needlessly and should be disallowed." We do not agree.

The following additional facts are necessary to our resolution of the defendant's claim. In its January 6, 2006 interlocutory orders on fees for the attorney for the minor child and of the guardian ad litem, the court began its resolution of the guardian ad litem's claim by detailing the extraordinary nature of this case. The court noted specifically that during the five year period that the defendant and the child were outside the jurisdiction, "the guardian ad litem made numerous attempts at locating her ward, even involving international police authorities. When the child (then eight years old) was located in Florida, she made a rapid trip there to accompany him back to this forum and [to] avoid his being treated as an abandoned child in that state."

The court then made findings associated with the time ledger sheets that the guardian ad litem attached to her affidavit of debt. It noted that "[h]er time sheets show that in those almost six years of service, she and her associate counsel recorded approximately 374.75 hours on the file. She filed legal pleadings; communicated with the parties and their counsel, with members of the extended family and other witnesses, and with law enforcement and child protection officials; attended court proceedings; and kept herself prepared for the multidimensional task to which this court had appointed her. The court does not find that her documentation of these efforts is exaggerated. Further, the court notes that her services were reasonably effective, as the child has been located and returned here in part due to her work." The court examined the guardian ad litem's claimed billing rate, reviewed her lodestar

calculations[10] on the basis of the rates of attorneys in her area with similar experience and reduced her claim by $1330, concluding that she was entitled to fees totaling $77,208.30.

The court also addressed an argument the plaintiff had raised that the guardian ad litem should be paid at lower state rates for the several hours she spent at Juvenile Court. The court found that argument unpersuasive because the guardian ad litem's appearance at Juvenile Court was a function of her appointment "by this court, not a separate appointment by that tribunal." It added that "the reasonableness of her fee request should be judged by the standards typically employed in this forum, and this court has weighed her request in light of the multiple factors which our appellate court, in *Ernst* v. *Deere & Co.*, 92 Conn. App. 572 [576, 886 A.2d 845] (2005), has recently said are pertinent in setting such fees . . . ."[11]

Last, in response to a motion filed by the defendant for an articulation of the January 6, 2006 order, the court, *Boland, J.*, issued a memorandum of decision clarifying its earlier order. In reply to the defendant's questions regarding the guardian ad litem's time

[10] The "lodestar" component of an attorney's fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

[11] The factors referenced by the court are "(1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases." *Ernst* v. *Deere & Co.*, supra, 92 Conn. App. 576; see also *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

claimed for "nonlegal work," in addition to the appropriate rate to be charged for such services, the court stated that "however 'legal work' is defined, the court did award her an hourly rate of $200 for some of her time spent upon 'other than legal work.' In probably every case, even an attorney serving qua attorney does work that is not strictly 'legal work,' including, but not limited to, fact investigation, education about the details and significance of those facts, communication with third parties who might have a role in the case, travel to court, etc." After referencing several Superior Court cases on the subject, the court concluded that "the hourly rate approved here is well in line with the amount which other courts have awarded to other counsel serving as guardians ad litem in recent years."

Our Supreme Court consistently has noted that "[trial] courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." (Internal quotation marks omitted.) *Shapero* v. *Mercede*, 262 Conn. 1, 9, 808 A.2d 666 (2002). Because of this general knowledge, "[t]he court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues." (Internal quotation marks omitted.) *Miller* v. *Kirshner*, 225 Conn. 185, 201, 621 A.2d 1326 (1993). "While the decision as to the liability for payment of such fees can be made in the absence of any evidence of the cost of the work performed . . . the dollar amount of such an award must be determined to be reasonable after an appropriate evidentiary showing." (Citation omitted; internal quotation marks omitted.) *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 644, 736 A.2d 190, cert. denied, 251 Conn. 920, 742 A.2d 359 (1999).

We conclude that under the circumstances of this unusual, lengthy and complicated appointment, the fees awarded to the guardian ad litem were reasonable.

The court carefully considered the time sheets submitted by the guardian ad litem in relation to the services she performed, compared her billing rate to the comparable rate of attorneys of similar experience in her area and weighed her requests pursuant to "the standards typically employed in this forum . . . ." After noting that this case was "anything but routine," the court engaged in a thorough analysis of the fees claimed before awarding an amount it deemed reasonable.

As to the specific challenges raised by the defendant, we agree with the court's assessment that the guardian ad litem's appearance in Juvenile Court was a function of her original appointment by the court in 1997 and that the court properly rejected the defendant's claim that a lower billing rate was warranted.[12] We likewise agree that any "nonlegal work" claimed by the guardian ad litem was a small portion of the total work performed and that because practically every case involves the performance of some services that are not strictly "legal" in nature, the court did not abuse its discretion. The defendant's other assertions concerning the guardian ad litem's allegedly questionable billing records are equally without merit. The guardian ad litem's role in this case went far beyond the role assigned in a typical child custody case and, consequently, involved significantly more effort for the guardian ad litem and any staff assisting her. Specifically, the guardian ad litem's claim as to the twenty-seven consecutive hours pertains to her flight to Florida to return the minor child to Connecticut. We agree with the court that under the circumstances of this case, such a claim was not an exaggeration. For the foregoing reasons, we conclude that the court did not abuse its discretion in finding

---

[12] The defendant does not make a plausible argument that lawyers working in juvenile courts must necessarily work for less than their normal billing rates, and we see no reason why that would be true.

that the guardian ad litem was entitled to fees totaling $77,208.30.

2

The defendant claims finally that the court improperly precluded evidence of fault during the apportionment hearing as to the guardian ad litem fees.[13] We disagree.

The following additional facts are necessary to our resolution of the defendant's claim. On November 18, 2005, the court, *Swienton, J.*, granted the guardian ad litem's motion to preclude evidence of postdissolution fault in the determination of the allocation of fees between the parties.[14] On March 28, 2006, an allocation hearing was held at which both parties submitted financial affidavits at the request of the court and testified regarding their current financial statuses and capabilities. Before the testimony began, the court, *Gordon, J.*, reiterated that evidence of postdissolution fault was precluded at the hearing. The court then rendered an oral decision, on the basis of the earning capacities of each party, inter alia, "[dividing] responsibility for both the attorney's fees and the guardian ad litem's fees, two-thirds attributable to [the defendant], one-third attributable to [the plaintiff]."

---

[13] The guardian ad litem argues that the record is not adequate for review of this claim because the defendant "failed to make a record relative to her proposed 'fault' evidence and thereafter failed to be prepared to present that record to this court." We disagree. Practice Book § 61-10 provides in relevant part that "[i]t is the responsibility of the appellant to provide an adequate record for review. . . . [T]he term 'record' . . . includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety." In addition to several other documents and exhibits, the defendant has provided a transcript of the relevant March 28, 2006 allocation hearing and a copy of the November 18, 2005 order granting the guardian ad litem's motion in limine for preclusion of fault testimony. These documents provide an adequate record for the resolution of the defendant's claim as to fault.

[14] See footnote 6, which specifically articulates the guardian ad litem's motion.

"The order for payment of [guardian ad litem] fees under General Statutes § 46b-62 requires consideration of the financial resources of both parties and the criteria set forth in General Statutes § 46b-82." (Internal quotation marks omitted.) *Lamacchia* v. *Chilinsky*, supra, 79 Conn. App. 376. Section 46b-82 instructs the court to consider, inter alia, "the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability [and the] estate and needs of each of the parties . . . ."

The additional criterion sought to be considered by the defendant, namely, postdissolution fault, is not a factor included among those enumerated in § 46b-82.[15] As already noted, the order for payment of guardian ad litem fees "requires consideration of the financial resources of both parties and the criteria set forth in General Statutes § 46b-82." (Internal quotation marks omitted.) *Lamacchia* v. *Chilinsky*, supra, 79 Conn. App. 376. There is no requirement, however, to consider any additional factors or evidence deemed relevant by any of the parties. Accordingly, we cannot conclude that the court abused its discretion in precluding evidence of postdissolution fault at the allocation hearing.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[15] The factors enumerated in General Statutes § 46b-82 are "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."