******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER J. FRANCINI, TRUSTEE, ET AL. *v.*
NICHOLAS A. RIGGIONE
(AC 41528)

DiPentima C. J., and Keller and Olear, Js.

*Syllabus*

The plaintiffs, trustees of a certain trust, sought to recover damages from the defendant for, inter alia, breach of contract. The plaintiff F had purchased an undeveloped lot from the defendant in the town of Milford with views of Long Island Sound, Charles Island, and Milford Harbor. At closing, the parties entered into an agreement pursuant to which the defendant was to maintain certain height restrictions on his property, regrade certain topsoil and trim certain tree limbs. After attempts to resolve disputes related to the topsoil and tree limbs had failed, the plaintiffs commenced this action. Following a trial, the court rendered judgment in favor of the plaintiffs with respect to their breach of contract claims and awarded them $4100 in damages, but it denied their request for injunctive and equitable relief with respect to their claim of private nuisance, and determined that the plaintiffs' two principal claims for injunctive relief regarding the tree limbs and the pile of topsoil had become moot because the defendant trimmed the relevant limbs and leveled the topsoil so that it no longer obstructed F's view. Subsequently, the court held an evidentiary hearing concerning a motion for attorney's fees filed by the plaintiffs in accordance with a provision of the parties' contract, which provided that the prevailing party in litigation enforcing the agreement would be entitled to recover reasonable attorney's fees and court costs. The trial court awarded the plaintiffs $93,405 in attorney's fees and costs and determined that the plaintiffs were the prevailing party under the contract. On the defendant's appeal to this court, *held:*

1. The trial court did not abuse its discretion by not discounting the award of attorney's fees on account of the small sum awarded to the plaintiffs for the breach of contract claim; although the defendant claimed that a proper analysis of the factors listed in rule 1.5 (a) of the Rules of Professional Conduct would compel a significant downward departure from the plaintiffs' initial lodestar calculation, which is the initial estimate of a reasonable attorney's fee calculated by multiplying the number of hours expended on litigation times a reasonable hourly rate, because the damages awarded were insignificant in relation to the court's award of attorney's fees, the plaintiffs had a legitimate claim for attorney's fees pursuant to the contract, and the fact that the defendant rendered the plaintiffs' claims for injunctive relief under the breach of contract claims moot by performing as required under the contract well into the trial did not obviate the plaintiffs' legitimate claim for attorney's fees pursuant to the contract.

2. The trial court abused its discretion in awarding attorney's fees with respect to the plaintiff's private nuisance claim on which the plaintiffs did not prevail; although a party may recover attorney's fees for unsuccessful claims that are inextricably intertwined and involve a common basis in fact or legal theory with the successful claims, the private nuisance and breach of contract claims in the present case were factually and legally distinct, and were not inextricably intertwined or based on a common legal theory.

Argued April 15—officially released October 1, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Hon. John W. Moran*, judge trial referee; judgment in part for the plaintiffs on the complaint and in part for the defendant on the counter-

claim; subsequently, the court granted the motion for attorney's fees filed by the plaintiffs, and the defendant appealed to this court. *Reversed in part*; *further proceedings.*

*Sean M. Dunne*, for the appellant (defendant).

*Charles J. Willinger, Jr.*, with whom, on the brief, were *Ann Marie Willinger* and *James A. Lenes*, for the appellees (plaintiffs).

*Opinion*

KELLER, J. This appeal arises from a breach of contract and private nuisance action brought by the plaintiffs, Peter J. Francini, Trustee, and Donald W. Anderson, Trustee, on behalf of the Peter J. Francini 1992 Revocable Family Trust,[1] against the defendant, Nicholas A. Riggione. After a five day trial to the court, the court rendered judgment in favor of the plaintiffs on their breach of contract claims, but denied their request for injunctive and equitable relief on their private nuisance claim. The defendant appeals from the court's subsequent award, after determining that the plaintiffs were the prevailing party, of approximately $90,000 in attorney's fees.[2] On appeal, the defendant essentially claims that the court abused its discretion in calculating the award of attorney's fees (1) because in awarding fees to the plaintiffs on their claims related to a breach of contract between the parties, a proper analysis of the factors listed in rule 1.5 (a) of the Rules of Professional Conduct[3] would compel a significant downward departure from the plaintiffs' initial lodestar calculation; and (2) when it awarded fees for a private nuisance claim on which the plaintiffs did not prevail.[4] We agree with the defendant that the court abused its discretion in awarding attorney's fees for a claim on which the plaintiffs did not prevail. Accordingly, we reverse the judgment of the trial court in part and remand the case for further proceedings consistent with this opinion.

The record reveals the following relevant facts, found by the trial court or otherwise undisputed, and procedural history. The defendant was the owner of a three lot subdivision on Gulf Street, which abuts Milford Harbor and Long Island Sound, in the city of Milford. In 2012, the defendant agreed to sell one of the undeveloped lots (lot 3) for approximately $800,000 to Francini so that he could build a home with views of Long Island Sound, Charles Island, and the Milford Harbor. The initial closing date was set for July 18, 2012. The parties failed to close by the July closing date, and, thereafter, their attorneys drew up a second, more comprehensive agreement with a new closing date of September 14, 2012 (lawyers' contract). The parties subsequently failed to close in September, 2012.[5]

In March, 2014, approximately eighteen months after the second closing date, the defendant conveyed title to Francini. At the March, 2014 closing, the parties entered into a final agreement (postclosing agreement),[6] and memorialized the defendant's remaining obligations relevant to lot 3. Among other things, the contract provided that the defendant was to maintain certain height restrictions on his property (lot 2), level and regrade whatever topsoil remained on lot 2 after the construction of Francini's home, and trim certain limbs of a large tree located on lot 2 that obscured Fancini's view of Long Island Sound and Charles Island.

On September 22, 2015, after subsequent attempts to resolve disputes related to the topsoil and tree limbs had failed, the plaintiffs commenced the present action. In the operative complaint, the plaintiffs sought money damages and equitable and injunctive relief for claims sounding in breach of contract and private nuisance. The plaintiffs alleged that, among other things, the defendant had breached the parties' contract by refusing to trim certain limbs from the tree and refusing to level the topsoil pile on lot 2, which, at its peak, reached a height of approximately thirteen feet and significantly obscured Francini's view of Long Island Sound. In their prayer for relief, the plaintiffs' primary request was that the court provide them with a mandatory injunction requiring the defendant to "prune the lower limbs" of the tree and "remove or grade" the topsoil in order to restore lot 2 to its "natural topography."[7] The defendant filed a counterclaim seeking damages for Francini's "[removal of] excess subsurface gravel and top soil material from [lot 3]," and his subsequent failure to stockpile said materials on lot 2.

After a five day trial, the court found in favor of the plaintiffs with respect to their breach of contract claims and awarded them $4100 in damages.[8] The court, however, denied the plaintiffs' request for injunctive and equitable relief with respect to their claim of private nuisance because the relief requested in their posttrial brief under this claim was not sufficiently pleaded in the operative complaint, and, thus, the defendant was not given adequate notice as to the specific relief being sought.[9] The court further concluded that the plaintiffs' two principal claims for injunctive relief regarding the tree limbs and the pile of topsoil had become moot after the fourth day of trial because the defendant trimmed the relevant limbs and leveled the topsoil so that they were no longer obscuring Francini's view.

Thereafter, the court held an evidentiary hearing over the course of two days on the plaintiffs' timely motion for attorney's fees.[10] In its memorandum of decision on attorney's fees, the court determined that, even though the plaintiffs did not prevail on their nuisance claim, and that their principal claims for injunctive relief under their breach of contract claims were moot, the plaintiffs were the prevailing party, and that an award of fees was warranted pursuant to paragraph twenty-nine of the lawyers' contract, which provided in relevant part: "[I]n the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable [attorney's] fees and court costs from the other party." The court further concluded that no downward departure from the initial lodestar calculation was warranted and, thereafter, awarded the plaintiffs $93,405 in attorney's fees and costs. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The defendant claims that the court abused its discretion in its award for attorney's fees. In his view, had the court properly analyzed all of the factors in rule 1.5 (a) of the Rules of Professional Conduct,[11] a significant downward adjustment from the plaintiffs' initial lodestar calculation[12] would be warranted. Specifically, the defendant argues that the court must have ignored the fourth factor, which provides that a court should consider "[t]he amount involved and the results obtained," because if the court had considered it, it would have reduced the award accordingly.[13] We find the defendant's argument unpersuasive.

The following additional facts are relevant to the defendant's claim. After the court concluded that the plaintiffs were the prevailing party, the defendant argued in his opposition to the plaintiffs' motion for attorney's fees, as he does on appeal, that the case did not involve novel or difficult questions of law and that the breach of contract damages awarded were insignificant in relation to the court's award for attorney's fees, and, therefore, a downward departure from the initial lodestar calculation was warranted. The defendant further argued that the entire litigation was unnecessary because the material facts were not in dispute and the plaintiffs' claims for injunctive relief were moot.

In response, the plaintiffs countered that, "[only] after the filing of this lawsuit and after the initial close of evidence in this case, and after the expenditure of [a] significant amount of money on attorney's fees by the [plaintiffs, did] the defendant remove the offensive tree limbs and . . . topsoil pile. . . . The fact of the matter is that the need for injunctive relief and specific performance concerning these issues was rendered moot, only after substantial litigation of the issues, when the defendant ultimately complied with his contractual responsibilities." The plaintiffs further argued that, "while the amount of monetary damages involved in the [plaintiffs'] complaint was minimal, the overriding focus of the case from day one was to return to [Francini] his million dollar view of Long Island Sound, a goal that was accomplished solely through the institution of the lawsuit."

After the two day evidentiary hearing on the plaintiffs' motion, the court issued its memorandum of decision, concluding that after "carefully review[ing] the factors outlined in [both] § 1.5 (a) of the Rules of Professional Conduct and . . . *Johnson* v. *Georgia Highway Express, Inc.*, [488 F.2d 714, 717–19 (5th Cir. 1974)]," the award of attorney's fees to the plaintiffs was warranted. In addressing the defendant's claim that the case did not present a novel or difficult question of law, the court noted that "the law on each . . . [count] individually may not be sophisticated, but taken

together as intertwined with the facts [of this case], the law borders on . . . complicated." With respect to the defendant's argument that litigating the issue of injunctive relief was unnecessary because the issues were ultimately moot, the court also identified that "[the defendant's] suggestion [that the fees were unnecessary because the issues became moot] lacks merit. The initial thrust and purpose of this lawsuit was to have the topsoil on lot 2 leveled. The trial commenced prior to, and was well underway, when [the defendant ultimately] leveled the topsoil and pruned the tree adjacent to Milford Harbor."[14]

We next turn to the applicable legal principles that govern the disposition of the defendant's claim. "An award of attorney's fees is not a matter of right. Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal; we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case. . . . Because the trial court is in the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion. . . .

"With respect to the relevant legal principles, we have often explained that Connecticut adheres to the American rule regarding attorney's fees. . . . Under the American rule, in the absence of statutory or contractual authority to the contrary, a successful party is not entitled to recover attorney's fees or other ordinary expenses and burdens of litigation . . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *WiFiLand, LLP* v. *Hudson,* 153 Conn. App. 87, 101–102, 100 A.3d 450 (2014).

Here, paragraph twenty-nine of the lawyers' contract provides a specific contractual term for the recovery of attorney's fees. It provides in relevant part: "[I]n the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable [attorney's] fees and court costs from the other party."

"If a contractual provision allows for reasonable attorney's fees, [t]here are several general factors which may properly be considered in determining the amount to be allowed as reasonable compensation to an attorney. These factors are summarized in [rule 1.5 (a) of the Rules of Professional Conduct]." (Internal quotation

marks omitted). Id., 102–103. "[T]he commentary to rule 1.5 provides that the factors specified in the rule . . . are not exclusive" and not all may be relevant given a particular instance. Id. 103. "[As] [w]e have explained [previously,] courts . . . may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." (Internal quotation marks omitted.) Id. For additional guidance in adjusting attorney's fees, Connecticut courts have adopted the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, supra, 488 F.2d 717–19.[15] See *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 37-39, 663 A.2d 432 (1995) (adopting *Johnson* factors).

The gravamen of the defendant's argument in his opposition to the plaintiffs' motion for attorney's fees, which is nearly identical to his claim now on appeal, was that the court's award for attorney's fees far outpaced the small sum awarded to the plaintiffs for breach of contract damages, and when considered in light of the fact that the plaintiffs' claim for injunctive relief due to breach of contract was rendered moot, the court's award of attorney's fees reflected an abuse of discretion. The defendant's argument focuses on one factor, namely, "the amount involved and the results obtained." He claims that a proper analysis of this factor, under the present circumstances, would compel a significant downward departure from the initial lodestar calculation, because the award for breach of contract damages was de minimis compared to the court's award for attorney's fees. He further argues that the present case is distinguishable from a typical case where attorney's fees might far outpace actual damages, such as in a case where a plaintiff acts as a private attorney general vindicating some public right. We are not persuaded.

In the context of the present case, it would appear that the defendant wants us to interpret this factor, in particular, the words "results obtained," as functionally equivalent to "court awarded contract damages." To adopt this view would thus imply that the plaintiffs' costs associated with seeking injunctive relief for breach of contract, due to the unquantifiable character of that relief, would be unrecoverable, despite paragraph twenty-nine of the lawyers' contract. We decline to adopt such a narrow view. Critically, as the defendant concedes, the principal claim in the underlying action was not for contract damages, but rather it was to compel his specific performance with respect to removing certain view-obscuring objects on lot 2. Thus, the result obtained was precisely the result sought. See *Conservation Commission* v. *Red 11, LLC*, 135 Conn. App. 765, 786-88, 43 A.3d 244 (2012) (no abuse of discretion when court awarded approximately $390,000 in attorney's fees to party exclusively seeking injunctive relief).

Furthermore, regardless of whether the defendant's ultimate performance was court ordered or done by his own volition, the fact remains that the defendant, despite his contractual obligations, removed the view-obscuring impediments only after significant litigation.[16] The fact that the defendant rendered the plaintiffs' claims for injunctive relief under the breach of contract claims moot by performing as required under the contract well into trial does not obviate the plaintiffs' legitimate claim for attorney's fees pursuant to the contract. On the basis of our review of the record, we do not conclude that the court abused its discretion by not discounting the award of attorney's fees on account of the small sum awarded to the plaintiffs for the breach of contract claims. Accordingly, the defendant's first claim fails.

## II

The defendant further claims that the court abused its discretion by awarding fees for work performed on the plaintiffs' private nuisance claim, on which they did not prevail.[17] Specifically, the defendant contends that because the plaintiffs did not prevail on their private nuisance claim, the court's failure to modify the award accordingly was an abuse of discretion.[18] In response, the plaintiffs contend that, because both sets of claims "arose from a single set of underlying facts, [i.e.] the failure of the defendant to perform in accordance with the [contract]," the failure of their nuisance claim is not fatal to the court's award of the full lodestar calculation. We agree with the defendant that because the plaintiffs did not prevail on their private nuisance claim, the court should have excluded fees related to the preparation and presentation of that claim from the award.

The following additional facts are relevant to the defendant's claim. In the amended complaint, the plaintiffs alleged that the defendant's property had "been cited by the city of Milford Health Department for health code violations and is in an extreme state of disrepair; the house located on the property has boarded up windows, debris, deteriorating and compromised porches, peeling clapboards, and is host to a number of pigeons, rodents and other opportunistic animals." This disrepair has thus "interfered with [Francini's] use and an enjoyment of the [property]." In the prayer for relief, the plaintiffs requested, without specific reference to the private nuisance claim, that the court grant "such other relief within equity and law appertain."

At trial, the court heard testimony from both parties relating to the dilapidated structure located on lot 2. Both parties testified that during their earlier negotiations, the structure on lot 2 was a point of discussion. According to Francini's testimony, the defendant assured him that the structure, although in disrepair, was undergoing a historical restoration. The plaintiffs

also presented evidence that the property was subsequently the object of a number of complaints from local residents, who had complained that the structure had become a refuge for pigeons, rodents and other wild animals. In response, the defendant produced evidence demonstrating that after he sold lot 3, his incremental progress on the lot 2 structure, despite his best efforts, was the result of the administrative and financial burdens that accompanied restoring the structure to its historic specifications. The court also heard testimony that, although the structure was an issue for Francini when considering whether to purchase lot 3, the contract never reflected any obligations on the part of the defendant as to the condition or continued renovation of the structure on lot 2.

Nevertheless, in the plaintiffs' posttrial brief they argued: "In light of the defendant's promises to [Francini], it would be unreasonable to allow the defendant to continue his renovations on the . . . premises at a glacial pace. The dilapidated condition of the . . . premises has been a constant cause of damage and annoyance to the plaintiffs. At a minimum, the defendant should be ordered to complete the installation of a new roof, windows, and exterior siding on the . . . premises in accordance with applicable building codes, within ninety days of the court's ruling."

In its memorandum of decision, the court concluded that "[n]owhere in the complaint does Francini allege facts regarding a new roof, windows, and siding on the defendant's house that would infer that he is seeking equitable relief regarding completion of a new roof, windows and exterior siding on the premises . . . . Further, Francini does not claim injunctive relief regarding repairing the residence . . . in his prayer for relief. Francini's prayer for relief contains the timeworn phrase '[s]uch other relief within which equity and law appertain.' . . . The defendant could not possibly be put on notice that Francini is seeking relief regarding the completion of the exterior of the residence on lot 2. Based on the foregoing, the court declines to order injunctive relief regarding the completion of the residence on [the defendant's property]." (Footnote omitted.)

Thereafter, in the defendant's opposition to the plaintiffs' motion for attorney's fees, he argued that because the plaintiffs were unsuccessful on this claim, the court should reduce the award accordingly. The court, however, concluded that "[t]hese issues were intertwined with the other issues presented in the trial . . . and the court cannot separate and cull out the precise time and effort spent on these specific issues." On appeal, the defendant makes essentially the same argument that he made in opposition to the plaintiffs' motion for attorney's fees.

This court has reasoned that a party may recover

attorney's fees for unsuccessful claims, but those claims must be inextricably intertwined and involve a common basis in fact or legal theory with the successful claims. See *Conservation Commission* v. *Red 11, LLC*, supra, 135 Conn. App. 787 n.16; see also *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 704 n.19, 981 A.2d 497 (2009), (citing approvingly to *Chopra* v. *General Electric Co.*, 527 F. Supp. 2d 230, 251–52 [D. Conn. 2007], which held that "[i]n order to recover on the entire fee incurred on both successful and unsuccessful causes of action, the claims must be 'inextricably intertwined' and involve a common basis in fact or legal theory"), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010). In the present case, we do not agree with the court's conclusion that the facts relating to both the breach of contract and private nuisance claims were inextricably intertwined or based on a common legal theory.[19] The plaintiffs' private nuisance claim was factually and legally distinct from their breach of contract claims. Because the plaintiffs were not successful on their private nuisance claim, we conclude that the court abused its discretion by not reducing the plaintiffs' award for attorney's fees accordingly.

The judgment is reversed in part and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] For ease of discussion we refer to Francini and Anderson collectively as the plaintiffs and individually by name where necessary.

[2] The defendant does not dispute the court's determination that attorney's fees should be awarded to the plaintiffs. The defendant also does not dispute the costs awarded to the plaintiffs.

[3] Rule 1.5 (a) of the Rules of Professional Conduct provides in relevant part: "The factors to be considered in determining the reasonableness of a fee include the following: (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent."

[4] In his principal appellate brief, the defendant asserts five separate claims of error. For ease of discussion, we address certain claims together and in a different order than they appear in the defendant's appellate brief.

The balance of the defendant's claims posit that the court abused its discretion by awarding attorney's fees that were (1) duplicative, and (2) unnecessarily incurred because most issues litigated were not materially in dispute. With respect to duplicative fees, the defendant argues that two trial attorneys were not necessary given that this was a garden variety breach of contract case. The defendant, however, concedes in his appellate brief that the trial court was correct when it stated that, "the [plaintiffs were] free to prosecute [their] case in whatever manner that [they saw] fit." We agree both with the court's observation and its subsequent determination that it was reasonable to award fees for both attorneys because the case was sufficiently complex due to the amount of contested facts and abundance of exhibits.

With respect to fees unnecessarily incurred in litigation, the defendant's primary claim is that the main issues of the case, as a practical matter, were not in dispute. After a careful review of the record, we conclude that the defendant's claim is simply belied by the record and that a number of

material issues remained unresolved prior to the commencement of trial.

[5] Thereafter, Francini brought an action against the defendant for specific performance pursuant to the lawyers' contract, which was settled.

[6] The trial court found that the lawyers' contract was amended by the postclosing agreement and that the two documents formed an integrated contract. We therefore refer to both documents as the contract.

[7] The plaintiffs' prayer for relief also sought money damages for breach of contract. Specifically, they sought damages for the defendant's failure to install curb cuts, a driveway apron, and frontage landscaping on the plaintiffs' lot pursuant to the contract. The court subsequently awarded the plaintiffs damages for the defendant's failure to install the driveway apron, curb cuts and to plant two trees per the contract.

[8] The court also determined that the defendant prevailed on his counterclaim and awarded him $192 in damages, thereby reducing the plaintiffs' award from $4100 to $3908.

[9] See *Solomon* v. *Hall-Brooke Foundation, Inc.*, 30 Conn. App. 129, 133–34, 619 A.2d 863 (1993) ("When prosecuting a civil matter, the general rule is that a prayer for relief must articulate with specificity the form of relief that is sought. . . . A party who fails to comply with this rule runs the risk of being denied recovery." [Internal quotation marks omitted.]).

[10] During the hearing the parties provided testimony, affidavits, time sheets, an engagement letter, and e-mails in support of their respective claims. The defendant does not dispute that the fee, which was based on an hourly fee agreement, was customary for similar legal services in the area.

[11] See footnote 3 of this opinion.

[12] "[A lodestar calculation is] [t]he initial estimate of a reasonable attorney's fee [which] is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." (Internal quotation marks omitted.) *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005).

[13] We note that the defendant did not file a motion to reargue the court's award of attorney's fees nor did he seek an articulation from the trial court with respect to its treatment of the factors in rule 1.5 (a) of the Rules of Professional Conduct. Despite the defendant's claim at oral argument before this court that filing a motion for articulation was not warranted, it is the appellant's responsibility to ensure that the record is adequate for review. See Practice Book § 61-10; *Commission on Human Rights & Opportunities* v. *Brookstone Court, LLC*, 107 Conn. App. 340, 352, 945 A.2d 548, cert. denied, 288 Conn. 907, 953 A.2d 651, cert. denied, 288 Conn. 907, 953 A.2d 651 (2008); see also *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 707, 981 A.2d 497 (2009) ("we read an ambiguous trial record to support, rather than to undermine, the judgment" [internal quotation marks omitted]), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010).

[14] In its memorandum of decision, the court further stated that it considered the nature of the litigation, the procedural history of the case, the hourly rates charged by the plaintiffs' counsel, the number of hours billed, the nature of the billing, as well as the results obtained. The defendant does not claim error with respect to the court's consideration of these other factors.

[15] "The *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases." *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005).

[16] See footnote 5 of this opinion.

[17] "[P]rivate nuisance . . . is a nontrespassory invasion of another's interest in the private use and enjoyment of land. . . . The law of private nuisance springs from the general principle that [i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. . . . The essence of a private nuisance is an interference with the use and enjoyment of land. . . . [I]n order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the

result of the defendant's negligence.'' (Citation omitted; internal quotation marks omitted.) *Rickel* v. *Komaromi*, 144 Conn. App. 775, 782–83, 73 A.3d 851 (2013).

[18] The defendant also claims that the court abused its discretion by awarding fees not associated with the underlying litigation. Specifically, the defendant claims that this was a breach of contract case and, therefore, any work related to issues involving the Planning and Zoning Commission of the City of Milford or the Milford Health Department should not have been included in the court's award. In the alternative, the defendant contends that, to the extent that those fees related to the plaintiffs' private nuisance claim, they should have not been awarded to them because they did not prevail on that claim. We disagree with the defendant's view that this work was unrelated to the underlying litigation, but we agree with the defendant that, to the extent that these fees were associated with the plaintiffs' unsuccessful and factually distinct private nuisance claim, they were improper.

[19] For example, the defendant claims that the affidavit submitted in support of the plaintiffs' request for attorney's fees referenced $3362 billed for work performing investigations and/or research at the Planning and Zoning Commission of the City of Milford and the Milford Health Department, which was primarily related to the plaintiffs' private nuisance claim.

----