CONSERVATION COMMISSION OF THE TOWN OF FAIRFIELD *v.* RED 11, LLC
(AC 32720)

Lavine, Espinosa and Flynn, Js.

Argued January 9—officially released May 29, 2012

*J. Christopher Rooney*, with whom, on the brief, was *Anne D. Peterson,* for the appellant (defendant).

*Edward V. O'Hanlan,* with whom was *Thomas J. Donlon,* for the appellee (intervening plaintiff Wilmington Trust Company).

*Opinion*

LAVINE, J. The principal issue in this appeal is whether the intervening plaintiff, Wilmington Trust Company (Wilmington), properly was awarded attorney's fees under General Statutes § 22a-44 (b) of the Inland Wetlands and Watercourses Act (wetlands act), which provides in relevant part that reasonable attorney's fees may be awarded to the "person which brought such action. . . ." The defendant, Red 11, LLC, doing business as Twin Oak Farms, appeals from the judgment of the trial court awarding Wilmington attorney's fees.[1] On appeal, the defendant claims that the trial court (1) improperly concluded that § 22a-44 (b) authorizes the award of attorney's fees to Wilmington and (2) abused its discretion in awarding Wilmington $391,967.80[2] in attorney's fees. We conclude that under the circumstances of this case, Wilmington "brought the action" and, thus, properly was awarded attorney's fees. We also conclude that the amount of attorney's fees awarded was not an abuse of discretion. Accordingly, we affirm the judgment of the trial court.

---

[1] The conservation commission of the town of Fairfield (commission) also was awarded attorney's fees and was a party to this appeal. The defendant, however, did not contest the trial court's award of attorney's fees to the commission, and thereafter withdrew the appeal as against the commission.

[2] Although the defendant states that it is contesting the *$426,437.79* in attorney's fees awarded to Wilmington, the court actually awarded Wilmington $391,967.80 in counsel fees, $29,654.50 in fees for two outside consultants, an engineer and a wetlands scientist, and $4815.49 in costs. A review of the defendant's briefs and argument to this court indicates that the defendant does not contest the court's award of costs or consultant fees to Wilmington. We therefore address only whether the court abused its discretion in awarding Wilmington $391,967.80 in attorney's fees. See part II of this opinion.

The following facts and procedural history are relevant to this appeal.[3] On May 11, 2001, Salvatore K. DiNardo purchased an eighteen acre parcel of land (parcel) located at 1159 Redding Road in Fairfield. DiNardo subsequently conveyed title to the defendant, a limited liability company of which he is the managing member. In connection with an application for a proposed subdivision submitted by a previous owner of the parcel, the conservation commission of the town of Fairfield (commission) discovered that the parcel contained three distinct wetlands and watercourse areas.[4] Shortly after the defendant obtained title to the parcel, it "began the systematic elimination of all . . . the protected wetlands . . . ."

Wilmington serves as trustee of the Henry D. Dupont III Marital Trust and, in that capacity, owns approximately 100 acres of land (property) downstream from the defendant's parcel. In 2002, a Wilmington property manager noticed intermittent flooding and sedimentation, which was eroding the creeks located on the property and damaging wooden bridges. Consequently, Wilmington had to close parts of the property to the public.[5]

On July 2, 2003, the commission issued a cease and desist order to the defendant, alleging that it had violated Fairfield regulations by filling, piping, draining and excavating regulated wetlands and watercourses without obtaining a permit. *Red 11, LLC* v. *Conservation Commission*, 117 Conn. App. 630, 635, 980 A.2d

[3] See *Conservation Commission* v. *Red 11, LLC*, 119 Conn. App. 377, 379–84, 987 A.2d 398, cert. denied, 295 Conn. 924, 991 A.2d 566 (2010), for a more detailed recitation of the underlying facts.

[4] As a result, the commission attached extensive conditions for approval of the proposed subdivision, which subdivision the previous owner ultimately did not pursue.

[5] Pursuant to the trust, the property is to remain undeveloped and available for public use. It contains hiking and horseback riding trails.

917, cert. denied, 294 Conn. 918, 984 A.2d 67 (2009). The order also alleged that the defendant, contrary to an earlier agreement between the defendant and the commission, had denied the commission access to the parcel and, as a result, the commission was forced to observe the parcel from adjacent properties and by helicopter surveillance. Id. On August 7, 2003, Wilmington filed a petition, pursuant to General Statutes § 22a-19 (a) of the Connecticut Environmental Protection Act (CEPA), to intervene in the administrative proceedings regarding the order. The commission granted Wilmington's petition.

On June 16, 2004, the commission issued another cease and desist order alleging violations in addition to those listed in its previous order. Id., 636. The commission again permitted Wilmington to intervene in the administrative proceedings regarding this order. The defendant appealed to the Superior Court from the cease and desist orders. Id., 636–37. Wilmington also successfully intervened in the appeals.

On August 5, 2004, the commission filed a verified complaint seeking a temporary and permanent injunction prohibiting the defendant from undertaking further construction activities and engaging in further violations of regulations. *Conservation Commission* v. *Red 11, LLC*, 119 Conn. App. 377, 383, 987 A.2d 398, cert. denied, 295 Conn. 924, 991 A.2d 566 (2010). Twenty-one days later, on August 26, 2004, Wilmington filed a "Motion to Intervene as a Party-Plaintiff," which stated that it sought to be "named a party-plaintiff" pursuant to Practice Book § 9-18. The motion additionally stated that Wilmington's "interest is particularly significant because of its status as a downstream property owner, which property has already been affected and will continue to be affected if [the defendant] is allowed to continue the predations that are the subject of this civil action"; that the controversy "cannot be heard in

fairness to all interested parties, unless [Wilmington] is allowed to participate as a party-plaintiff"; that Practice Book § 9-18 "clearly gives the [c]ourt the discretion to bring into the case a party which has an interest that would be affected by the action"; and that "there will be no prejudice to [the defendant] by the fact that [Wilmington] has been joined as a party-plaintiff." Wilmington also attached, as an exhibit to this motion, its petition to intervene in administrative proceedings pursuant to CEPA, filed on August 7, 2003. The defendant did not object to Wilmington's motion, and the trial court granted it on August 30, 2004.

On August 15, 2006, the commission and Wilmington jointly filed an amended complaint containing four counts. *Conservation Commission* v. *Red 11, LLC*, supra, 119 Conn. App. 383. The first count was alleged by the commission alone and repeated the allegations contained in the original complaint, namely, that the defendant had been conducting activities on the parcel that disrupted and destroyed wetlands and continually violated the cease and desist orders. The remaining counts were alleged by Wilmington alone. Id. Count two alleged violations of the wetlands act, count three alleged violations of CEPA and count four alleged a common-law trespass claim.[6] Id., 383 n.1.

The trial court consolidated the appeals from the cease and desist orders with the injunction action and issued four memoranda of decision on April 4, 2007. The court dismissed the defendant's administrative appeals, concluding that "regulated activities, such as the filling, draining and piping of the wetlands and watercourses had occurred on the [parcel] without a required permit" and that "these activities did not fall within the farming exception set forth in [General Statutes] § 22a-40 and

[6] Wilmington withdrew count four on October 19, 2006.

§ 4.1 of the Fairfield regulations."[7] *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 637. Regarding the injunction action, the court "imposed a temporary injunction prohibiting the defendant from any further construction activities at 1159 Redding Road and from any further violations of the General Statutes or the Fairfield regulations. It also ordered that a subsequent evidentiary hearing would be held to determine the restoration of the site, civil penalties, costs, fees, expenses and attorney's fees." *Conservation Commission* v. *Red 11, LLC*, supra, 119 Conn. App. 383–84.

On July 25, 2008, following a hearing, the court issued another memorandum of decision imposing a permanent injunction, ordering restoration of the parcel and awarding civil penalties of $25,000.[8] Id., 384. The court additionally stated that it would award the commission and Wilmington reasonable attorney's fees under § 22a-44 (b) of the wetlands act in an amount to be determined following a hearing. Id. On July 24, 2009, Wilmington filed a motion for attorney's fees and costs seeking $426,437.79 along with an affidavit from its lead counsel explaining the amount requested. The court held hearings on March 26, 2010, and April 30, 2010. On August 27, 2010, the court issued a detailed memorandum of decision awarding Wilmington the $426,437.79 in fees and costs it requested under § 22a-44 (b), of which $391,967.80 are attorney's fees.[9] See footnote 2 of this opinion. This appeal followed.

[7] The defendant appealed to this court from the trial court's dismissals, and this court affirmed the judgments of the trial court. *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 632–33.

[8] The defendant also appealed from that judgment, and this court again affirmed the judgment of the trial court. *Conservation Commission* v. *Red 11, LLC*, supra, 119 Conn. App. 378.

[9] The court also awarded the commission the $69,569.80 in attorney's fees and costs it requested, which the defendant did not contest at trial and does not contest in this appeal. See footnote 1 of this opinion.

I

The defendant first claims that the court improperly awarded Wilmington attorney's fees under the wetlands act because (1) Wilmington intervened pursuant to CEPA, not the wetlands act, and (2) the commission, rather than Wilmington, filed the original complaint, and, thus, Wilmington was not the entity that "brought such action" under § 22a-44 (b). We disagree.

A

Preliminarily, we address whether Wilmington intervened in the injunction action pursuant to CEPA. The defendant argues that Wilmington intervened pursuant to § 22a-19 (a) of CEPA and, as such, any attorney's fees award should have been under General Statutes § 22a-18 (e). The defendant contends that because the court awarded Wilmington attorney's fees under the wetlands act, the award was in error. Wilmington argues that it did not intervene pursuant to CEPA; rather, as demonstrated by the text of the motion, it intervened "as a party-plaintiff" pursuant to Practice Book § 9-18.[10] Wilmington explains that it merely attached, as an

[10] Wilmington's "Motion to Intervene as a Party-Plaintiff" states in relevant part: "[P]ursuant to Practice Book Section 9-18 . . . [Wilmington] moves to be named a party-plaintiff"; Wilmington's "interest is particularly significant because of its status as a downstream property owner, which property has already been affected and will continue to be affected if [the defendant] is allowed to continue the predations that are the subject of this civil action"; Wilmington "has identified an expert in hydrology and civil engineering . . . whose testimony is anticipated will be presented in support of [its] claim that its property has been damaged at any hearing in this action"; the controversy "cannot be heard in fairness to all interested parties, unless [Wilmington] is allowed to participate as a party-plaintiff"; Practice Book § 9-18 "clearly gives the [c]ourt the discretion to bring into the case a party which has an interest that would be affected by the action"; and "there will be no prejudice to [the defendant] by the fact that [Wilmington] has been joined as a party-plaintiff."

The motion also states that pursuant to its " 'Petition for Intervention Under General Statutes Section 22a-19 (a),' dated August 7, 2003," Wilmington intervened in an administrative enforcement action against the defendant; that it "has maintained an interest in the enforcement action, has consulted on numerous occasions with the Commission, and has a very

exhibit, its earlier petition to intervene in administrative proceedings pursuant to CEPA "[a]s an indication of its long-standing interest in the dispute over [the defendant's] destruction of wetlands . . . ." The defendant's argument is not persuasive.

"It is the substance of a motion . . . that governs its outcome . . . ." *State* v. *Taylor*, 91 Conn. App. 788, 792, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005). Therefore, in order to determine the effect of the court's granting of Wilmington's motion to intervene, we briefly explain the differences between full intervention pursuant to Practice Book § 9-18 and limited intervention pursuant to CEPA. Practice Book § 9-18 provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority on its motion, shall direct that person to be made a party." Section 9-18, which contains virtually the same language as General Statutes § 52-107;[11] *Rosado* v. *Bridgeport Roman Catholic Diocesan*

strong interest in ensuring that the Inland Wetlands Regulations of the Town of Fairfield and the environmental statutes of the State of Connecticut are adhered to by [the defendant]"; and that Wilmington is "seeking to be named a party to the administrative appeals that [the defendant] has filed from the Cease and Desist Orders that have been issued to date, and [it] fully intends to work with the Town in defense of those orders." Wilmington also attached its "Petition for Intervention under General Statutes Section 22a-19 (a)" to the motion as an exhibit.

[11] General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

*Corp.*, 60 Conn. App. 134, 137 n.5, 139 n.7, 758 A.2d 916 (2000); "applies to intervention as of right . . . ." Id., 138. "Two of the four criteria" for intervention as of right, "namely the direct and substantial interest in the subject matter, and the impairment to the movant's interest if he or she is not involved in the case are, in essence, equivalent to the test for aggrievement." Id., 145; see also *Horton* v. *Meskill*, 187 Conn. 187, 195, 445 A.2d 579 (1982). Thus, "[i]mplicit in the granting of a motion to intervene is the determination that the party has a right which could be adversely affected and that his interest is presently not adequately protected." *Johnson* v. *Ivimey*, 3 Conn. App. 392, 395, 488 A.2d 1275, cert. denied, 196 Conn. 811, 495 A.2d 279 (1985).

Moreover, "[a] successful intervenor is typically granted status as a party plaintiff or a party defendant." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 152. A court also "has the authority [however] to grant intervention limited to particular issues, and such limited intervention is not intended to allow enjoyment of all the prerogatives of a party litigant." Id. Intervention pursuant to § 22a-19 (a) of CEPA[12] is one example of such limited intervention. Unlike intervention pursuant to Practice Book § 9-18, § 22a-19 "authorizes any citizen or other entity, without having to first establish aggrievement, to intervene in an existing proceeding"; *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 593, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000); "for the limited purpose of raising environmental issues"; (internal quotation marks omitted) *Pathways, Inc.* v.

---

[12] General Statutes § 22a-19 (a) provides in relevant part: "In any administrative, licensing or other proceeding, and in any judicial review thereof . . . any person . . . or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

*Planning & Zoning Commission,* 259 Conn. 619, 624, 793 A.2d 222 (2002); see also *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 714–15, 563 A.2d 1339 (1989).

We conclude that the court granted Wilmington intervention as a full party plaintiff pursuant to Practice Book § 9-18 and not CEPA because Wilmington's motion explicitly relied on Practice Book § 9-18 and addressed the requirements of intervention as of right. We agree with Wilmington that attaching its previous petition to intervene in administrative proceedings pursuant to § 22a-19 did not somehow transmogrify the motion into one seeking limited intervention pursuant to CEPA.

B

We next address the defendant's claim that Wilmington was not the entity that "brought" the action and, thus, the court was not authorized to award it attorney's fees under § 22a-44 (b) of the wetlands act. We reject the defendant's interpretation of the relevant statutory language.

Section 22a-44 (b) of the wetlands act provides in relevant part: "The Superior Court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of . . . sections [22a-36 to 22a-45], to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator *together with reasonable attorney's fees* which may be allowed, all of *which shall be awarded to the commissioner, municipality, district or person which brought such action. . . .*" (Emphasis added.)

The defendant argues that § 22a-44 (b) authorizes the award of attorney's fees only to the entity that originally

initiated the action, and that because Wilmington intervened three weeks after the commission commenced the action on August 5, 2004, Wilmington may not be awarded attorney's fees. We reject the contention that the phrase "person which brought such action" in § 22a-44 (b) is synonymous with the phrase "person which *initiated* such action." Rather, we conclude that Wilmington "brought such action" in accordance with § 22a-44 (b) because it intervened as of right as a full party to the action.

Whether § 22a-44 (b) authorizes the award of attorney's fees to Wilmington presents a question of statutory construction, over which our review is plenary. See *Fennelly* v. *Norton*, 294 Conn. 484, 492, 985 A.2d 1026 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . In addition, common sense must be used in statutory interpretation, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Citation omitted; internal quotation marks omitted.) *Komondy* v. *Zoning Board of Appeals*, 127 Conn. App. 669, 676, 16 A.3d 741 (2011). "When a statute is not plain and unambiguous,

we also look for interpretative guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 301 Conn. 323, 338, 21 A.3d 737 (2011).

"[T]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Because we must respect the legislative prerogative of choosing the special circumstances under which [attorney's fees] awards may be made . . . we require a clear expression of the legislature's intent to create a statutory exception [to the rule]." (Internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Mellon*, 286 Conn. 687, 695, 945 A.2d 464 (2008). This clear statement rule applies not only to the question of whether a statute authorizes attorney's fees in general, but "it also applies when the legislature clearly has authorized the court to award attorney's fees but . . . the statute is ambiguous as to whether a particular entity is entitled to such an award." Id.

As directed by § 1-2z, we first conclude that § 22a-44 (b) is not plain and unambiguous. Although in some contexts the phrase "brought an action" is used to mean "commenced" an action; see, e.g., *Rocco* v. *Garrison*, 268 Conn. 541, 549, 848 A.2d 352 (2004) ("there is no substantive distinction between the terms 'bringing' an action and 'commencing' an action" for purposes of statutes of limitation and accidental failure of suit statute); it also has been used in other contexts to mean "prosecute" or "continue" an action; see, e.g., *Curtis*

v. *County of Los Angeles*, 172 Cal. App. 3d 1243, 1247–52, 218 Cal. Rptr. 772 (1985); id., 1252 ("the word 'brought' encompasses not only the filing of an action, but also its *continued maintenance*" for purposes of statute providing attorney's fees if an entity "brought a proceeding" without reasonable cause and not in good faith [emphasis in original]). Connecticut appellate courts have recognized that the same statutory term may have different meanings in different contexts. See, e.g., *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 641, 778 A.2d 121 (2001) ("the word action may have different meanings in different contexts" [internal quotation marks omitted]); *Mac's Car City, Inc.* v. *DiLoreto*, 238 Conn. 172, 177, 679 A.2d 340 (1996) ("[o]ur case law has repeatedly recognized that the term final judgment may have different meanings in different contexts" [internal quotation marks omitted]). We therefore conclude that the phrase "brought such action" is susceptible to more than one reasonable interpretation and that, accordingly, we may consider the legislative history and policy of the statute in seeking to understand its meaning. See *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 15, 12 A.3d 865 (2011) (noting "the relatively low threshold necessary to establish ambiguity for purposes of statutory interpretation, namely, the existence of more than one 'reasonable' reading for the statute").

Having concluded that the statute is not plain and unambiguous, we next address the parties' arguments in support of their interpretations with the aid of the full array of statutory construction tools. The defendant argues that the phrase "brought such action" in § 22a-44 (b) should be interpreted to mean "initiated the action" in light of the comparable attorney's fees provision of CEPA, § 22a-18 (e),[13] which provides that a court

[13] General Statutes § 22a-18 (e) provides: "The court may award any person, partnership, corporation, association, organization or other legal entity which maintains an action under section 22a-16 or intervenes as a party in

may award attorney's fees to a person who *"maintains an action under section 22a-16 or intervenes* as a party in an action for judicial review under section 22a-19 . . . ." (Emphasis added.) See *State* v. *Fernando A.*, 294 Conn. 1, 21, 981 A.2d 427 (2009) ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). Just as the phrase "brought an action" sometimes is deemed to be the equivalent of the phrase "commenced an action," so, too, is the phrase "maintain an action." For example, General Statutes § 22a-16 of CEPA, upon which the attorney's fees provision of CEPA, § 22a-18 (e), is based, provides in relevant part that "any person . . . may maintain an action . . . for declaratory and equitable relief . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." This court has explained that § 22a-16 provides a private right of action that "authorizes any citizen or organization . . . to *initiate* a declaratory or injunctive action to protect the public trust. . . . Section 22a-16 allows the *initiation* of declaratory or injunctive actions to challenge an environmental harm . . . ." (Citation omitted; emphasis added.) *Hyllen-Davey* v. *Plan & Zoning Commission*, supra, 57 Conn. App. 593–94; see also *Poly-Pak Corp. of America* v. *Barrett*, 1 Conn. App. 99, 103, 468 A.2d 1260 (1983) ("[plaintiff] . . . is barred by [General Statutes § 33-412, now § 33-921] from maintaining this action and is thus not entitled 'to set the machinery of the courts in operation' "). The attorney's fees provisions of both CEPA and the wetlands act

an action for judicial review under 22a-19, and obtains declaratory or equitable relief against the defendant, its costs, including reasonable costs for witnesses, and a reasonable attorney's fee."

simply track the statutory language providing the private rights of action, which language generally is treated the same as "commence" or "initiate" an action. Therefore, we do not find that the difference between "maintain an action" and "brought such action" supports the defendant's construction.

Section 22a-18 (e) additionally provides that courts may award an entity that "intervenes as a party in an action for judicial review under section 22a-19" attorney's fees. We also do not find the absence of similar language in § 22a-44 to be dispositive in light of the difference between full party intervenors and limited intervenors pursuant to CEPA. See part I A of this opinion. The limited status of environmental intervenors pursuant to CEPA—intervenors who are not entitled to enjoy "all the prerogatives of a party litigant"; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 152; but, rather, are "strictly limited to the raising of environmental issues" and may not recover damages; *Connecticut Water Co.* v. *Beausoleil*, 204 Conn. 38, 45, 526 A.2d 1329 (1987)—may explain why the legislature specifically included them in § 22a-18 as an entity that may be awarded attorney's fees. Additionally, CEPA itself grants a special form of intervention, whereas the wetlands act does not. Thus, it is reasonable that the legislature would track the CEPA intervention language in the CEPA attorney's fees provision but not include general intervention language in the wetlands act attorney's fees provision.

The defendant also suggests that its construction is reasonable because the legislature likely intended that attorney's fees be awardable only to municipalities, which are tasked with enforcement of the wetlands act. The defendant, however, fails to provide any support for this contention. Contrary to the defendant's contention, our Supreme Court, in *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 297, 933 A.2d 256

(2007), held that § 22a-44 (b) confers a private right of action. Moreover, the public interest in protecting wetlands and watercourses; see General Statutes § 22a-36; coupled with the attorney's fees provision, is consistent with the concept of the "private attorney general" who pursues litigation that has the effect of vindicating the public interest. See *Hernandez* v. *Monterey Village Associates Ltd. Partnership*, 17 Conn. App. 421, 425–26, 553 A.2d 617 (1989). Attorney's fees provisions "provide an incentive for these 'private attorney generals' to take on the burden of vindicating the public interest . . . by providing a mechanism to compensate them for the costs of doing so." *Commissioner of Environmental Protection* v. *Mellon*, supra, 286 Conn. 696.

The defendant next argues that because private entities already are entitled to intervene and seek attorney's fees pursuant to CEPA, the legislature did not "need to give intervenors rights under § 22a-44 (b)." This argument is unavailing. First, as discussed, full party intervenors are in a posture fundamentally different from that of environmental intervenors pursuant to CEPA. Second, CEPA and the wetlands act provide different forms of relief. See *Windels* v. *Environmental Protection Commission*, supra, 284 Conn. 299 ("§ 22a-44 (b) provides for specific remedies, such as . . . the imposition of civil penalties that are not available under CEPA"); see also id., 301 ("'permitting claims' " available to private parties under the wetlands act); *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 134–38, 836 A.2d 414 (2003) (permitting claims not available to private parties under CEPA). The fact that attorney's fees are available to environmental intervenors under CEPA in no way supports the argument that attorney's fees are unnecessary for full party intervenors like Wilmington under the wetlands act.

Finally, the defendant argues that awarding intervenors attorney's fees would encourage "frivolous intervention" by unscrupulous attorneys who would run up

litigation costs and "turn [intervenor status] into a means of profiting." The wetlands act, however, does not grant a special form of intervention. Thus, unlike intervention pursuant to CEPA, any entity seeking to intervene and recover attorney's fees under the wetlands act would have to satisfy the requirements of either permissive or as of right intervention, both of which take into account the entity's interest in the controversy and necessarily limit the types of entities that may successfully intervene. See *Horton* v. *Meskill*, supra, 187 Conn. 195–97. Stated simply, a trial court retains the right to deny a motion to intervene if it sees fit. Additionally, as discussed in part II of this opinion, a trial court has considerable discretion in fixing the amount of attorney's fees and weighs a number of factors intended to limit the fees to an amount that is reasonable. If a court suspects that counsel have run up unreasonable or unjustifiable fees, it can refuse to award them. The defendant's argument that attorneys would gratuitously intrude themselves into ongoing wetlands cases to amass large sums of undeserved legal fees is therefore unfounded.

For a number of reasons, we agree with Wilmington that because it was made a full party to the action by intervening pursuant to Practice Book § 9-18; see part I A of this opinion; at that point it became "a person who brought such action." First, although the legislative history provides little guidance, the general purpose of the wetlands act and the attorney's fees provision comports with our approach. As this court noted in *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 639, "the broad legislative objectives underlying the [act] are in part to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution . . . ." (Internal quotation marks omitted.) See General

Statutes § 22a-36 (legislative findings explaining importance of protecting wetlands and watercourses). "Our Supreme Court has described the purpose underlying the act as remedial. *Windels* v. *Environmental Protection Commission*, [supra, 284 Conn. 297–98]; see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 11:1, p. 331 ('[t]he net effect . . . has been that the wetlands statutes have been liberally construed')." *Red 11, LLC* v. *Conservation Commission*, supra, 639. This court also has explained that the wetlands act attorney's fees provision has "ameliorative purposes"; *Conservation Commission* v. *Price*, 5 Conn. App. 70, 74, 496 A.2d 982 (1985); and that, in permitting courts to award costs and fees, the legislature intended "to place the financial burden of restoration upon the violator." Id., 75.

Second, this approach encourages judicial economy. Because Wilmington personally was aggrieved by the defendant's actions, it presumably could have filed a separate action under § 22a-44 (b) of the wetlands act. See *Windels* v. *Environmental Protection Commission*, supra, 284 Conn. 297, 302–303. Under the defendant's reasoning, Wilmington could have been awarded attorney's fees in this scenario even if the two actions were consolidated; see Practice Book § 9-5; because each entity filed an original complaint. Therefore, denying Wilmington attorney's fees because it decided to intervene as a full party rather than commence a separate action exalts form over substance and would result in additional work for the judiciary and needless delay. Prospective intervenors would forgo intervening in existing actions and opt instead to commence separate actions in the hope of obtaining attorney's fees. See *Wilder* v. *Bernstein*, 965 F.2d 1196, 1202 (2d Cir.), cert. denied sub nom. *Administrator, New York City Dept. of Human Resources* v. *Abbott House*, 506 U.S. 954, 113

S. Ct. 410, 121 L. Ed. 2d 335 (1992). Encouraging such conduct makes little sense.

Third, but by no means last, an unduly strict interpretation of the phrase "brought such action" would lead to absurd results. Under the defendant's construction, if a town initiates an action on day one, an entity like Wilmington intervenes as of right on day two, the town withdraws from the case on day three and for the next ten years the intervenor pursues the litigation alone, the trial court would be forbidden from awarding the intervenor any attorney's fees. Such an approach would be contrary to the principle that "statutes should be interpreted so as to conform to common sense, rather than so as to violate it." *Commission on Human Rights & Opportunities* v. *Housing Authority,* 117 Conn. App. 30, 46, 978 A.2d 136 (2009), appeal dismissed, 302 Conn. 158, 24 A.3d 596 (2011). The legislature could not have intended such a result.

In light of the foregoing, we conclude that the legislature intended to authorize trial courts to award attorney's fees to entities such as Wilmington and that § 22a-44 (b) satisfies the requirement that the legislature clearly express its intent in this regard. We reach this conclusion because Wilmington intervened as of right and became a full party plaintiff with "all the prerogatives of a party litigant." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.,* supra, 60 Conn. App. 152. Therefore, we conclude that it "brought such action" in accordance with § 22a-44 (b) and that the court was authorized to award it attorney's fees.

II

The defendant's second claim is that the court abused its discretion in awarding Wilmington the $391,967.80 in attorney's fees that it requested.[14] Specifically, the

---

[14] Wilmington's lead counsel filed an affidavit in which he explained that Wilmington submitted a total of 1026.7 hours worked by seven attorneys and two nonattorneys who assist the law firm's land use practice group—

defendant contends that the court's award of fees approximately six times larger than the fees awarded to the commission "is on its face unreasonable." The defendant also argues that the court failed to analyze properly the fees requested in accordance with the required reasonableness factors. We disagree.

We review the reasonableness of the court's award of attorney's fees under the abuse of discretion standard. See *Conservation Commission* v. *Price*, supra, 5 Conn. App. 75. "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of [the amount of attorney's fees awarded] is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion it did." (Internal quotation marks omitted.) *Land Group, Inc.* v. *Palmieri*, 123 Conn. App. 84, 98, 1 A.3d 234 (2010). "A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal . . . for the trial court is in the best position to evaluate the circumstances of each case." (Internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 64, 762 A.2d 508 (2000).

"[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a

a planning specialist and a certified wetlands scientist. Their hourly rates ranged from $190 to $575 and changed from time to time. The hours submitted represent only the work done after the institution of the injunction action in August, 2004, although the firm billed Wilmington a considerable amount, $75,379.43, in legal fees in connection with the administrative enforcement actions and appeals prior to the injunction action. In addition to the affidavit, Wilmington attached to its motion for attorney's fees approximately 100 pages of detailed invoices setting forth the nature of counsel's work, the amount of time spent on each task and the corresponding hourly rates.

reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors. . . . For guidance in adjusting attorney's fees, Connecticut courts have adopted the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 715, 717–19 (5th Cir. 1974). The *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases." (Citation omitted; internal quotation marks omitted.) *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005).

Following the *Johnson* framework, the court in this case, in its detailed memorandum of decision, made an initial estimate that both the hourly rate paid to Wilmington's counsel and the hours submitted "were reasonable based on the complexity of the litigation involved." The court relied on the expert testimony of Frederick S. Ury, a former president of the Connecticut Bar Association and an attorney "familiar with the hourly rates that are charged in Fairfield County for the present type of litigation." Ury reviewed the hourly rates submitted by Wilmington's counsel and "found them to be reasonable and within the hourly rates normally charged by other larger firms in the county who could have been hired by [Wilmington] to handle this type of litigation." The court also relied on its "general knowledge of what would be reasonable compensation

for services . . . in this case" and its "having had the opportunity of presiding over this litigation for seven years . . . ." See *Smith* v. *Snyder*, 267 Conn. 456, 471, 839 A.2d 589 (2004) ("[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees" [internal quotation marks omitted]). The court then analyzed all of the *Johnson* factors and determined that the factors did not justify a reduction of its initial lodestar calculation.[15] In particular, regarding the magnitude of the case and the results obtained, the court stated that "[t]he plaintiffs were able to successfully obtain a permanent injunction prohibiting the defendant from any further damage" and "will be reimbursed the extensive economic costs of this litigation, which has resulted in the restoration of a functional and valuable natural resource for the state of Connecticut and the citizens of Fairfield."[16] See *Conservation Commission* v. *Price*, supra, 5 Conn. App. 74. Moreover,

---

[15] The court also explained that the litigation had been overly time consuming because of the various delays caused by the defendant. See *Ernst* v. *Deere & Co.*, supra, 92 Conn. App. 576 n.3 (*Johnson* factors not exclusive; courts "may assess the reasonableness of the fees requested using any number of factors" [internal quotation marks omitted]).

[16] We see merit in Wilmington's contention that, because the court did not reduce the fee on the basis of the defendant's argument that Wilmington failed to obtain relief on all its claims, the court implicitly concluded that the claims on which Wilmington did not obtain relief were " 'inexplicitly intertwined' " with the claims on which Wilmington succeeded. See *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 704 n.19, 981 A.2d 497 (2009) (citing with approval *Chopra* v. *General Electric Co.*, 527 F. Sup. 2d 230, 251–52 [D. Conn. 2007]), which states that a party may recover attorney's fees for unsuccessful claims if they are "inexplicably intertwined and involve a common basis in fact or legal theory" [internal quotation marks omitted]), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010); *Heller* v. *D. W. Fish Realty Co.*, 93 Conn. App. 727, 735–36, 890 A.2d 113 (2006) (because "plaintiffs' breach of contract and negligence claims were related to their [unfair trade practices] claim [in that] they depended on the same facts," trial court should not have ordered plaintiffs to apportion attorney's fees among their claims); see also *Perez* v. *D & L Tractor Trailer School*, supra, 707 ("we read an ambiguous trial record to support, rather than to undermine, the judgment" [internal quotation marks omitted]).

contrary to the defendant's argument that the court ignored its analysis of Wilmington's fees request, the court specifically stated that it reviewed "the defendant's objections."

The defendant provides no legal support for the assertion that the discrepancy between the amount of fees awarded to Wilmington and the lesser amount awarded to the commission renders the award to Wilmington "on its face unreasonable." The court, relying on the testimony of Ury, explained that often "an attorney representing his community does so at a discounted fee arrangement and also does so with limited resources."[17] Additionally, responding to the argument of Wilmington's counsel that Wilmington played the lead role in the litigation, the trial court found that Wilmington was "a major contribut[or] to the effort . . . ." The court also found that Wilmington "was well served by skilled and experienced attorneys throughout this litigation."

On the basis of our review of the record, we cannot conclude that the court abused its discretion in awarding Wilmington $391,967.80 in attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] Counsel for the commission stated that he normally would charge "[m]ore than double" what he charged the commission in this case.